IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:10-CV-00477-N |
| WEALTH MANAGEMENT SERVICES LTD., | § § § § | |
| Defendant. | § | |

## **ORDER**

This Order addresses the Receiver's request for entry of default, motion for default judgment, and motion for Rule 37(d) sanctions [55] ("Receiver's Motion"). For the reasons that follow, the Court construes the Receiver's motion for default as a motion for summary judgment and grants the motion.

### I. ORIGINS OF THE MOTION

This action is one of many arising out of the ongoing Securities and Exchange Commission fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (collectively, "Stanford"). As part of that ongoing action, this Court appointed Plaintiff Ralph S. Janvey as Receiver and authorized him to "immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and

to any assets traceable to assets owned by the Receivership Estate." Second Am. Order Appointing Receiver, July 19, 2010 [1130], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). As part of his duties, the Receiver was charged to "[i]nstitute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.*

To that end, the Receiver brought this action against Defendant Wealth Management Services, Ltd. ("Wealth") on March 8, 2010, alleging Wealth had received substantial compensation from Stanford entities that derived from the sale of the allegedly fraudulent certificates of deposit that formed the backbone of the Stanford Ponzi scheme. In particular, the Receiver alleges that between March 9, 2006 and January 15, 2009, Wealth received payments of CD proceeds in the amount of $9,825,333.00. Receiver's Compl. ¶ 6. The Receiver sought recovery of those payments under theories of fraudulent transfer and unjust enrichment.

Although Wealth initially was active in its defense, for the majority of time since the suit was filed it has been totally absent from the litigation. Wealth filed an answer [5] on May 19, 2010, but afterwards became unresponsive to all the Receiver's attempts to conduct discovery and advance the litigation. *See* Receiver's Mot. 2-3. On June 5, 2014, Wealth's counsel moved to withdraw, citing an inability to communicate with Wealth regarding discovery or other basic litigation matters. *See* Counsel's Mot. Withdraw [46] 1. On July

22, 2014, the Receiver filed this motion for entry of default and for default judgment against Wealth.  Wealth did not respond.

The Receiver moves for entry of default and for default judgment under Federal Rule of Civil Procedure 55 and for sanctions under Rule 37(d).  The Court finds, however, that entry of default is inappropriate in cases where the nonmoving party has appeared by filing an answer and has otherwise taken some action in the litigation.  *See Bass v. Hoagland*, 172 F.2d 205, 209-10 (5th Cir. 1949) (holding that once defendant filed a response, no default judgment could be entered); *see also* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2682 (3d ed. 2014) (interpreting *Bass* as such).  Although the Receiver attempts to argue against the historical understanding of *Bass*, the Court declines to unsettle its established interpretation.  However, the Receiver's motion can be resolved as a motion for summary judgment.[1]  Treating it as a motion for summary judgment, the Court finds that the Receiver has demonstrated a lack of dispute of material fact and accordingly grants summary judgment.

---

[1] The Court recognizes the procedural protections that generally must be afforded when a motion is converted in to a motion for summary judgment.  *See, e.g.*, *Georgia S. & F. Ry. Co. v. Atlantic Coast Line R. Co.*, 373 F.2d 493, 497-98 (5th Cir. 1967).  However, those procedural protections are deemed necessary because of the threat that a nonfinal motion, such as a motion to dismiss, will be converted into a final judgment.  *See id.*  Here, the Receiver's motion as filed would have resulted in final judgment.  Wealth was therefore already under the requisite notice that this action might be resolved finally against it.  There is accordingly no need to afford the additional notice and procedural protections that typically accompany the conversion of a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

## II. THE RECEIVER IS ENTITLED TO SUMMARY JUDGMENT

### *A. The Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated

assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### *B. The Deemed Admissions Establish a Lack of Dispute of Material Fact*

Under Federal Rule of Civil Procedure 36(a), a matter in a request for admission is deemed admitted if the party to whom the request is made fails to respond within thirty days. *Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991). Admissions may serve as the basis for granting a motion for summary judgment. FED R. CIV. P. 56(c)(1)(A). "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001).

### *1. The Receiver's Asserted Fraudulent Transfer Claims* –

The Receiver's complaint sought disgorgement of all CD proceeds paid from Stanford entities to Wealth. The Receiver's claim was based on the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1)-(2). TUFTA provides in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>     (1) with actual intent to hinder, delay, or defraud any creditor of
>     the debtor; or

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1)-(2).

The Receiver relies on both Sections 24.005(a)(1) and (a)(2). To establish liability under (a)(1), the Receiver asserts that fraudulent intent is presumed because the Stanford entities constituted a Ponzi scheme. *See Quilling v. Schonsky*, 2007 WL 2710703, at *2 (5th Cir. 2007) ("[T]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception."). The Receiver alleges under (a)(2) that Stanford did not receive reasonably equivalent value and that (a)(2)(A) is established because as a Ponzi scheme, the Stanford entities' assets were "unreasonably small" as a matter of law. *See id.* There are sufficient deemed admissions to establish liability under Sections 24.005(a)(1) and (a)(2).

Wealth's deemed admissions establish liability under Section 24.005(a)(1). In his second request for admissions, served on June 20, 2014, the Receiver sought admission from Wealth that the Stanford entities constituted a Ponzi scheme. *See* Receiver's Mot. Ex. 6 [56-6] 0052. Moreover, the Receiver requested admission that Wealth was engaged in selling CDs marketed by various Stanford entities. *See id.* at 0052-0053. Because Wealth has failed

ORDER – PAGE 6

to file any response to the requests for admission, these matters are deemed admitted. Having established that the Stanford entities constituted a Ponzi scheme, the Receiver has accordingly established that the transfers were made with actual intent to defraud creditors, *see Quilling*, 2007 WL 2710703, at *2, thereby satisfying Section 24.005(a)(1).[2]

Having satisfied Section 24.005(a)(1), the burden shifts to Wealth to establish an affirmative defense by producing evidence of both (1) reasonably equivalent value, and (2) good faith. *See In re IFS Fin. Corp.*, 417 B.R. 419, 441 (Bankr. S.D. Tex. 2009) (citing TEX. BUS. & COM. CODE ANN. 24.009(a)), *aff'd* 669 F.3d 255 (5th Cir. 2012). Beyond failing to respond with any suggestion of an affirmative defense, Wealth is deemed to admit both that it did not give reasonably equivalent value and that it did not receive Stanford assets in good faith. *See* Receiver's Mot. Ex. 6 at 0051. Accordingly, the Court finds that Wealth has failed to carry its burden under Section 24.005 and that it is liable to the Receiver under Section 24.005(a) for fraudulent transfers received from Stanford entities.

Deemed admissions also establish the amount for which Wealth is liable to the Receiver. Wealth is deemed to admit that it received $400,000.00 in payments from Stanford Financial Group Limited and $9,425,333.00 from Stanford Financial Group Company. *See*

---

[2]There is also sufficient evidence to establish fraudulent intent under the factors listed in Section 24.005(b). For instance, the Stanford entities had been threatened with suit at the time certain transfers were made, *see* Receiver's Mot. Ex. 6 at 0054 (deemed admitted that the Stanford entities were under SEC investigation at the time of certain transfers); Wealth Management did not give reasonable consideration for the assets transferred, *see* Receiver's Mot. Ex. 6 at 0051 (matter deemed admitted); and the Stanford entities, which fell into the ongoing receivership, became insolvent shortly after the transfers were made. TEX. BUS. & COM. CODE ANN. §§ 24.005(b)(4), (b)(8), (b)(9).

Receiver's Mot. Ex. 6 at 0051. The Receiver seeks a judgment for the combined $9,825,333.00. Because the deemed admissions and the applicable statute establish that this $9,825,333.00 was the result of fraudulent transfer, the Court holds the Receiver is entitled to a judgment in the amount of $9,825,333.00.

   *2. The Court Grants The Receiver Pre- and Postjudgment Interest* – The Court also grants the Receiver prejudgment interest on the award. Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). There are two sources for calculation of prejudgment interest: (1) general principles of equity, and (2) an enabling statute. *Id.* However, Texas courts have held, contrary to the Receiver's position, that Texas Financial Code Section 302.002 does not apply to judgments. *See, e.g.*, *Smith v. Huston*, 251 S.W.3d 808, 827-28 (Tex. App. – Fort Worth 2008, pet. denied) (holding Section 302.002 does not apply to "judgment creditors").

  Instead, the Court must apply Texas common law, which provides that prejudgment interest should conform to the statutory accrual and compounding formulas applicable to suits for wrongful death, personal injury, and property damages. *Johnson & Higgins*, 962 S.W.2d at 530-32. The compounding and accrual formulas applicable to those causes of action provide that prejudgment interest begins to accrue "on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed." TEX. FIN. CODE ANN. § 304.104; *see also de la Garza v. de la Garza*, 185 S.W.3d 924, 928

ORDER – PAGE 8

(Tex. App. – Dallas 2006, no pet.). "The prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment." TEX. FIN. CODE ANN. § 304.103. Prejudgment interest is computed as simple interest. *Johnson & Higgins*, 962 S.W.2d at 532. In the absence of evidence establishing when Wealth received written notice of this claim, the Court awards interest as of the date suit was filed in this action: March 8, 2010. As of the date of this Order, the judgment interest rate is determined by publication in the Texas Register. TEX. FIN. CODE ANN. § 304.004. The current judgment rate is 5.00%. *Interest Rates*, OFFICE OF CONSUMER CREDIT COMMISSIONER (Sept. 22, 2014), http://www.occc.state.tx.us/pages/int_rates/Index.html. The Court therefore grants simple interest of 5.00% from March 8, 2010 to the date of this Order.

Finally, the Court grants the Receiver postjudgment interest compounded annually from the date of this Order, until paid. *See* 28 U.S.C. § 1961. The postjudgment interest rate as of the date of this Order is 0.10%.

***3. The Court Grants the Receiver Costs and Attorneys' Fees*** – The Court additionally exercises its discretion under Texas Business and Commerce Code Section 24.013 to grant the Receiver's request for attorneys' fees and costs. The Receiver has demonstrated accrual of at least $263,071.80 in attorneys' fees and $3,162.05 in costs through the prosecution of this action. *See generally* July 22, 2014 Day Declaration, Ex. 9 [56-9]. The Receiver has established that these costs and expenses were reasonable and in accordance with the Court-ordered fee structure for Receivership matters. *See id.*

Accordingly, the Court grants the Receiver's motion and awards $263,071.80 in attorneys' fees and $3,162.05 in costs.

## CONCLUSION

The Court construes the Receiver's motion for default and for entry of default judgment as a motion for summary judgment. The Court grants that motion and awards the Receiver $9,825,333.00 as return of voidable fraudulent transfers received by Wealth Management. The Court grants prejudgment simple interest of 5.00% on that amount from March 8, 2010 to the date of this Order. The Court awards attorneys' fees of $263,071.80 and costs of $3,162.05. The Court grants postjudgment interest on that amount at 0.1% to be calculated from the date of this Order until payment of the judgment. Because the Court finds them unnecessary, the Court declines to enter the requested Rule 37(d) sanctions against Wealth.

Signed October 1, 2014.

_____
David C. Godbey
United States District Judge